UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal Action No. 25-10031-BEM |
| RICHARD NGUYEN | ) ) ) | |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS

**MURPHY, J.**

Defendant Richard Nguyen moves the Court to suppress evidence resulting from the execution of a search warrant at his residence. For the reasons stated herein, the Court will deny the motion.

I. **Background**

On January 29, 2025, a Grand Jury returned an indictment naming Defendant in three counts of distribution of and possession with intent to distribute methamphetamine. The same day, an F.B.I. investigator applied for a warrant to search Defendant's residence (the "Middlesex Premises") for "data" and computer equipment, including "mobile phones." Dkts. 43-3–4.

The investigator submitted an affidavit in support of the warrant application. Dkt. 43-5 (the "Affidavit" or "Aff."). The Affidavit details five controlled drug purchases reportedly involving Defendant and a cooperating witness. *Id.* ¶¶ 42–61. Four of those five purchases occurred between January and April 2024 at a different residence identified with Defendant (the "Washington Premises"). *Id.* ¶¶ 42–56. The fifth took place in October 2024 near Defendant's workplace in Chelmsford, MA. *Id.* ¶¶ 57–61. The Affidavit establishes Defendant's residence at the Middlesex Premises, *see, e.g.*, *id.* ¶ 61, but does not otherwise make a direct connection between the Middlesex Premises and any reported drug activity.

Magistrate Judge Boal granted the application.  Dkt. 43-2 at 1.  The warrant that issued permitted search of the Middlesex Premises, Dkt. 43-3, and authorized investigators to search and seize "data and computer hardware, computer software, mobile phones, and storage media, constituting evidence, fruits or instrumentalities of" the target offenses, "from January 1, 2024 through the date of seizure," Dkt. 43-4 at 1.  The warrant goes on to list specific categories of information for seizure and provides relevant definitions.  Dkt. 43-4 at 1–4.

On January 30, 2025, investigators arrested Defendant and searched the Middlesex Premises, seizing three mobile phones attributed to Defendant.  Dkt. 43-6 at 2.

On July 8, 2025, Defendant moved to suppress the evidence obtained pursuant to the warrant executed at the Middlesex Premises.  Dkt. 38.  The Government opposed.  Dkt. 43.  On August 13, 2025, the Court heard oral argument and took the motion under advisement.  Dkt. 45.

## II.     Standard of Review

"'The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation' of its terms."  *United States v. Levin*, 874 F.3d 316, 321 (1st Cir. 2017) (quoting *United States v. Leon*, 468 U.S. 897, 906 (1984)).  "Nevertheless, the Supreme Court created the exclusionary rule as a 'prudential doctrine . . . to compel respect for the constitutional guaranty."  *Id.* (internal quotation marks removed) (quoting *Davis v. United States*, 564 U.S. 229, 236 (2011)).  "The exclusion of evidence obtained by an unconstitutional search is 'not a personal constitutional right' but a remedy whose 'sole purpose . . . is to deter future Fourth Amendment violations.'"  *Id.* (quoting *Davis*, 564 U.S. at 236–37).

An application to a magistrate for a warrant "must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched—the so-called 'nexus' element."  *United States v. Roman*, 942 F.3d 43, 50 (1st Cir. 2019) (quoting *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir.

2

2015)).  Absent "'[a]llegations of intentional or reckless misstatements or omissions,'" "reviewing courts generally afford substantial deference to a magistrate's determination of probable cause." *Id.* (quoting *Burke v. Town of Walpole*, 405 F.3d 66, 82 (1st Cir. 2005) (alteration in original)).  As a result, courts reverse magistrates' findings of probable cause only where there is "no substantial basis for concluding that probable cause existed." *United States v. Faust*, 853 F.3d 39, 46 (1st Cir. 2017) (quoting *Dixon*, 787 F.3d at 58).

Probable cause expires, meaning that it must exist "at about the time the search warrant would issue, rather than at some remote time." *United States v. Gonzalez*, 113 F.4th 140, 148 (1st Cir. 2024) (quoting *United States v. Zayas-Diaz*, 95 F.3d 105, 113 (1st Cir. 1996)).  Information supporting an application for a warrant is considered "stale" if it "establishe[s] probable cause at some point in the past but does not support probable cause at the time of the warrant's issuance." *Id.* (alteration in original) (quoting *United States v. McLellan*, 792 F.3d 200, 210 (1st Cir. 2015)).  To analyze whether such information has, in fact, gone "stale," courts "undertake a 'context-dependent' inquiry that accounts for 'the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information.'" *United States v. Pyrtle*, 770 F. Supp. 3d 330, 342 (D. Mass. 2025) (quoting *United States v. Encarnacion*, 26 F.4th 490, 498 (1st Cir. 2022)).

Probable cause is also site-specific, meaning that it must exist as to the specific location to be searched.  *Roman*, 942 F.3d at 50–51.  "The inquiry is not whether 'the owner of the property is suspected of crime' but rather whether 'there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought.'" *Id.* at 51 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) (internal quotation marks omitted)).

"In addition to the probable cause requirement, the Fourth Amendment demands that search warrants 'particularly describ[e] the place to be searched, and the persons or things to be seized.'" *Pyrtle*, 770 F. Supp. 3d at 342 (quoting *United States v. Corleto*, 56 F.4th 169, 176 (1st Cir. 2022) (alteration in original) (quoting U.S. Const. amend. IV)). "To satisfy the Fourth Amendment, a 'warrant (1) must supply enough information to guide and control the executing agent's judgment in selecting where to search and what to seize, and (2) cannot be too broad in the sense that it includes items that should not be seized.'" *Id.* (quoting *Corleto*, 56 F.4th at 176).

"However, because suppression can impose a significant social burden, the exclusionary rule is not ironclad." *United States v. Pimentel*, 26 F.4th 86, 90 (1st Cir. 2022). "Instead, courts must consider 'the flagrancy of the police misconduct at issue' in deciding whether the exclusionary rule applies." *Id.* (quoting *Leon*, 468 U.S. at 911). "As the Supreme Court has made clear in a line of cases beginning with *Leon*, this cost-benefit analysis is not satisfied when an officer acts in 'objective good faith' such that any 'marginal or nonexistent benefits produced by suppressing evidence . . . cannot justify the substantial costs of exclusion.'" *Id.* (quoting *Leon*, 468 U.S. at 920, 922).

## III. Discussion

The Court finds that the warrant to search the Middlesex Premises was sufficiently particular but that the Affidavit supporting its issuance failed to establish probable cause as to that location. However, because there are no allegations of misconduct and because the executing officer's reliance was objectively reasonable, the *Leon* good-faith exception applies.

### A. Particularity

The Court disagrees with Defendant that the warrant was insufficiently particular. Defendant objects that the warrant's introductory, "'catch-all' language" ("All data and computer hardware, computer software, mobile phones, and storage media, constituting evidence, fruits or

instrumentalities of violations of [the Target Offenses], from January 1, 2024 through the date of seizure," Dkt. 43-4 at 1) made its scope unconstitutionally broad. *Cf.* Mot. at 12–14. However, "a warrant's language must be read in context, such that 'the "general" tail of the search warrant will be construed so as not to defeat the "particularity" of the main body of the warrant.'" *United States v. Kuc*, 737 F.3d 129, 133 (1st Cir. 2013) (quoting *United States v. Abrams*, 615 F.2d 541, 547 (1st Cir. 1980)). As in *Kuc*, Defendant's "argument misses the mark because he reads the warrant's first clause in isolation." *Id.* After that introductory clause, the warrant goes on to enumerate specific categories of data (*e.g.*, "Telephone contact lists, phone books and telephone logs of individuals or devices which may have been contacted by use of this device or by other means for the purpose of committing the Target Offenses") and as well as definitions (*e.g.* "'Computer hardware' means any electronic device capable of data processing (such as a computer, smartphone, cell/mobile phone, or wireless communication device); any peripheral input/output device (such as a keyboard, printer, scanner, monitor, and drive intended for removable storage media); any related communication device (such as a router, wireless card, modem, cable, and any connections), and any security device, (such as electronic data security hardware and physical locks and keys)"). Dkt. 43-4 at 1–4. Read holistically, these additional elements provided "enough information to guide and control the executing agent's judgment in selecting where to search and what to seize." *See Corleto*, 56 F.4th at 176. Defendant makes no argument to the contrary.[1]

---

[1] The Court need not decide whether, as the Government argues, the introductory clause was itself sufficiently particular under the Fourth Amendment. *See* Dkt. 43 at 15.

### B. Probable Cause

Defendant raises two arguments as to probable cause: that the information supporting the warrant application was stale, Mot. at 11–12; and that it failed to establish a nexus between the criminal conduct and the location searched, *id.* at 4–11.

#### 1. Staleness

The Court disagrees with Defendant that the information supporting the warrant application was unconstitutionally stale. A "primary consideration in evaluating the staleness issue is whether the affidavit describes a single transaction or a continuing pattern of criminal conduct." *United States v. Nocella*, 849 F.2d 33, 40 (1st Cir. 1988) (quoting *United States v. Tucker*, 638 F.2d 1292, 1299 (5th Cir. 1981)). Here, the Affidavit established a ten-month pattern of drug dealing, the last reported instance of which was only three months before the search. Aff. ¶¶ 42–61. "By its very nature, drug trafficking, if unchecked, is apt to persist over relatively long periods of time." *Nocella*, 849 F.2d at 40. Moreover, the application sought a warrant for data and electronic equipment, which by its "nature," *Encarnacion*, 26 F.4th at 498, does not decay and is often maintained by its user. *Cf. United States v. Grupee*, 682 F.3d 143, 146 (1st Cir. 2012) (finding it reasonable to conclude that a suspect would still have a cell phone containing evidence of a drug sale that occurred six months prior).

#### 2. Nexus

The Court, however, agrees with Defendant that the warrant application established an insufficient nexus between the evidence sought and the location to be searched, *i.e.*, the Middlesex Premises. Although the Affidavit undisputedly sets forth evidence of Defendant's drug dealing, that is, standing alone, insufficient to warrant search of a suspect's residence. *See Roman*, 942 F.3d at 51–52. This follows from the general principle that, "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause

6

to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher*, 436 U.S. at 556. In the drug context, this applies with greatest clarity to the drugs themselves. *See, e.g.*, *United States v. Chalas*, 478 F. Supp. 3d 143, 150 (D. Mass. 2020) ("[M]embership in a drug conspiracy by itself does not—and cannot—establish automatic probable cause for a search of person's home for drugs."). However, in keeping with the general rule, it can apply as well to instrumentalities or any other evidence. *See, e.g.*, *United States v. Mubarak*, 2022 WL 2971881, at *6 (D. Mass. July 27, 2022) (finding that a warrant lacked probable cause as to a residence where its accompanying affidavit "ma[de] no direct connection between the house and any alleged criminal activity" and there were "no additional facts" indicating that proceeds or written records would be found at the residence).

    Here, besides evidence of dealing, the Affidavit includes testimony from an investigator stating that, based on his experience, relevant evidence was likely to be found at Defendant's residence. *See, e.g.*, Aff. ¶ 68 ("In a substantial number of residential searches executed in connection with the drug investigations in which I have been involved, drug-related evidence has typically been recovered, including cellular telephones."). However, the First Circuit has previously "expressed skepticism," shared by this Court, "that probable cause can be established by the combination of the fact that a defendant sells drugs and general information from police officers that drug dealers tend to store evidence in their homes." *Roman*, 942 F.3d at 51–52 (quoting *United States v. Bain*, 874 F.3d 1, 23–24 (1st Cir. 2017)). Courts have accordingly "rejected a per se rule automatically permitting the search of a defendant's home when he has engaged in drug activity." *Id.* at 51. The Affidavit attempts to nullify this conclusion by claiming that police experience somehow establishes probable cause that drug dealing accessories would be found at Defendant's home. This Court finds that bald assertion unavailing.

The Affidavit also contains information demonstrating that Defendant used a cell phone as part of his dealings, *see, e.g.*, Aff. ¶ 40, and that, in or around the Middlesex Premises, he used *a* cell phone, though not necessarily *the* cell phone connected with any of those dealings, *see, e.g.*, Aff. ¶ 61. However, the Court finds these facts insubstantial, given the ubiquity of cell phones, in and out of illegal operations. *Cf. Roman*, 942 F.3d at 51 (finding that "the use of a vehicle" in drug transactions was insufficient to establish probable cause as to a residence, where the vehicle involved in the drug transactions "may or may not [have been] the same vehicle seen at [the defendant's] residence").

### C.  Good-Faith Exception

Nevertheless, the Court finds that the *Leon* good-faith exception applies. Defendant makes no allegation of "misstatements or omissions" in the warrant application. *Cf. Roman*, 942 F.3d at 50, 53. Nor is the Affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)). As discussed above, Defendant is correct that the Affidavit fails to make a connection between the Middlesex Premises and any drug activity, and it is well established that probable cause does not follow from the general notion that "drug dealers tend to store evidence in their homes," *Roman*, 942 F.3d at 51–52. Thus, if the warrant had sought items particular to the "business" of drug dealing—*e.g.*, proceeds, the drugs themselves—the Court would have been inclined to find execution of the warrant objectively unreasonable. However, the items at issue here are arguably a horse of a different color. After all, at least in the undersigned's experience, people *do* generally keep their cell phones (including work phones) on their person, rather than leave them at their worksite. This point does not alter the Court's probable cause analysis, and, moving forward, this Court would be inclined to look less favorably on searches resembling this fact pattern. However, neither side has presented any prior

8

case dealing with this precise issue, and the Court cannot conclude that it is so settled or so obvious as to rise to the level of "flagrancy," *Leon*, 468 U.S. at 911, warranting exclusion.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion is DENIED.

**So Ordered.**

Dated: September 2, 2025

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court